### SAMUEL OSBORNE, JR. *vs.* JOHN JORDAN & Trustees.

A party to whom the lay or share of a seaman in a whaling voyage is assigned, in trust for the assignor, is not liable as his trustee in foreign attachment, until the lay is set apart and delivered specifically, or paid over in money.

SHAW, C. J.  The only question in controversy in this case is, whether the trustees are chargeable on their answers.  Though there are several series of questions and answers, still the case is left somewhat confused, particularly as to sums and dates. We think, however, that the following facts may be gathered from the answers, and are sufficient for the decision of the case. Jordan, the principal defendant, was a seaman on board the whale ship Massachusetts, which sailed from Nantucket in the fall of 1851, at a lay of one one-hundred-and-fiftieth; and before he sailed gave an order, without date, to the trustees, Bates, Cook & Co., to whom he was indebted in a small sum—about twenty dollars—authorizing them to receive the whole amount of his lay or voyage ; notice of this order was given to the owners of the vessel, through their agent, James Macy, by whom it was duly entered on their books ; the trustees afterwards made further advances to the seaman, or for his account, and he owed them at the time of the service of this process $120.06.  The process was served on them on the 22d of March 1853; and they received no money on the order, or otherwise on account of the principal, until the 31st of March 1853.

Several other questions were put, and answers given, as to the whole amount of the voyage of the ship, the share of the seaman, and the amount of the bill of the owners against the seaman, for advances and supplies to him during the voyage, which in the view we take of the question are immaterial.  The vessel arrived at Wood's Hole on the 12th of March 1853 ; the oil was sent to Nantucket in lighters ; some of it arrived at Nantucket before the 22d, but not the whole ; and the voyage was not made up till after that time.

Upon these facts, the court are of opinion that the trustees cannot be charged.  The question is, whether they were so

liable on the 22d of March, when the writ was served. In order to be charged, they must either have goods or estate of the principal, liable to be specifically attached by the officer, if they could be come at, property which might be afterwards turned out by the trustee, and taken by the officer as the property of the principal, on an execution in the nature of a *fieri facias*, and sold ; or they must then be indebted to the principal. Of the former there is no pretence, and therefore the only question is, whether at that time they owed him any thing. A *debitum in præsenti, solvendum in futuro*, is sufficient; but it must be a debt certainly payable at some time, and not a mere existing executory engagement, leaving it to depend on a contingency, whether any thing will ever become payable.

The plaintiff contends, that this order upon the owners, given by the seaman to the trustees, authorizing them to receive the whole of his voyage or lay, in part to secure them for advances, was an assignment, and vested an interest in them. We think that is a true view of the transaction ; it was an authority coupled with an interest, in its nature not revocable by the party who gave it ; and this is the true description of an assignment. But it was an equitable assignment; the assignment of a chose in action. It gave them an equitable or beneficial interest, to the extent of their advances ; beyond that, it enabled them to act for the owner, and to that extent they were his agents, and bound to act in good faith, for his interest ; but they would not become his debtors or owe him any thing, until they had received money on his account. And even if we regard the entry made in their books by the shipowners, of the notice given by the trustees, as an acceptance of the order, so that the trustees could maintain an action in their own names, within the principles of the case of *Mowry* v. *Todd*, 12 Mass. 281, where, on notice of the assignment of a chose in action, the debtor had promised to pay to the assignee, it would make no difference. The assignees would not become debtor to the assignor, and therefore would not be chargeable as his trustees, until in virtue of the order they had actually received money, beyond their own claims, to his use.

In one of the cases cited by the plaintiff, *Guild* v. *Holbrook*, 11 Pick. 101, it was held, that where property had been intrusted to one to sell, and he had sold and taken promissory notes, he could not be charged as trustee of the principal, until money had been paid on the notes. S. P. *Hopkins* v. *Ray*, 1 Met. 79. The other cases cited in no respect conflict with these views. *Hastings* v. *Baldwin*, 17 Mass. 552, merely goes to show that the order, being for value, is a valid assignment; which may well be admitted. To the same effect are the cases of *Gardner* v. *Hoeg*, 18 Pick. 168, and *Emery* v. *Lawrence*, 8 Cush. 151. In the case of *Taber* v. *Nye*, 12 Pick. 105, the owners of the ship themselves were summoned as trustees of the seaman, and the only question was, what was a termination of the voyage, within the meaning of the seaman's contract.

Here the assignees of the lay are summoned as trustees ; and their liability does not depend on the arrival of the vessel or the discharge of the cargo, or even on the making up of the accounts of the voyage, but on the fact, whether, at the time of the service, they had received any money, so as to be the debtors of the assignor.

There may be a question upon the true construction of the contract between the shipowner and the seaman, whether the lay or share of the seaman is to consist of an aliquot part of the oil and bone brought home in the ship, to be set off to him to hold specifically ; or, valuing these products in money, whether the seaman is entitled to receive his share of the money at which these products are valued. We are inclined to think, that, by the terms of this contract, the seaman is entitled of right to have his share of the oil set off to him specifically, to be disposed of as he thinks fit. But we believe that in a great majority of cases, perhaps we might say almost all, the practice is, to value the oil, and for the owners to pay each one's lay in money. This is probably most convenient for all parties, and when it is done fairly, and with the consent of the parties, there can be no objection to it, even though it be the right of the seaman to have his specific quantity of oil. But we have not thought it necessary to consider this question more particularly in the present case, because it would make no difference in the result.

Harvard College *v.* Society for Promoting Theological Education & others.

The trustees, as assignees of the principal defendant, stood in his place, and were entitled to his rights. We have considered the question, supposing them, in his right, to be entitled to money; and as that money was not due from the owners, they would not be liable, till they received it. But supposing they were entitled to receive a quantity of oil and bone, no specific quantity of oil or bone would be in their possession, and subject to attachment, until the one-hundred-and-fiftieth part of the cargo had been set apart and delivered to them specifically, as and for the lay, to which they were entitled. No such designation and appropriation was made before the attachment, nor indeed was ever made, so that they cannot be held on that ground.

*Trustees discharged.*

*T. D. Robinson*, for the plaintiff.

No counsel appeared for the trustees.